152 N.J. Super. 235 (1977)
377 A.2d 938
BOARD OF EDUCATION OF THE TOWNSHIP OF PISCATAWAY, PLAINTIFF-APPELLANT,
v.
PISCATAWAY MAINTENANCE & CUSTODIAL ASSOCIATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 1977.
Decided August 12, 1977.
*237 Before Judges MATTHEWS, SEIDMAN and HORN.
*238 Mr. Frank J. Rubin argued the cause for appellant (Messrs. Rubin and Lerner, attorneys).
Mr. Sidney Birnbaum argued the cause for respondent (Messrs. Rothbard, Harris & Oxfeld, attorneys).
The opinion of the court was delivered by SEIDMAN, J.A.D.
This appeal involves a provision for extended total disability benefits contained in a contract between the Board of Education of the Township of Piscataway (board) and the Piscataway Maintenance & Custodial Association (association). The contract concerned the terms and conditions of employment of maintenance and custodial workers employed by the board and was for the period from July 1, 1973 to June 30, 1976. The issue is whether the provision in question, to the extent that it granted such benefits to employees who were qualified under the contract, exceeded the board's statutory authority under the Education Law (Title 18A) and was thus invalid and unenforecable despite the provisions of the New Jersey Employer-Employee Relations Act (N.J.S.A. 34:13A-1 et seq).
On December 11, 1974 Jerry Columbis, a school custodian in the employ of the board, fell from a ladder while at work and sustained a compression fracture of one of his lumbar vertebrae. He alleged in an affidavit filed in these proceedings that the injury required hospitalization and medical treatment; that he returned to work in September 1975, but after about five weeks was unable to continue because of intense pain, and that although he later again attempted to work for several months, his physical condition forced him to stop. On March 10, 1976 Columbis applied for extended total disability leave benefits "commencing with the expiration of my accumulated sick leave and after applying accumulated personal, floating holiday and vacation time. ."[1] *239 The request was not acted upon, whereupon Columbis submitted a written grievance to the board, which responded by rejecting the application on the ground that total disability had not been established medically. The association demanded arbitration of the dispute under the grievance procedure set forth in the contract.
The board then filed a verified complaint to compel the association to withdraw the arbitration demand. It alleged that the demand was premature in that the preliminary steps in the grievance procedure had not been exhausted. It alleged further that the dispute was beyond the scope of arbitration. The board obtained an order directing the association to show cause why the relief sought in the complaint should not be granted. On the return day of the order to show cause, following a short and perfunctory hearing, the trial judge entered an order "denying the relief sought in the Order to Show Cause and Complaint." The board appealed.
The hearing below consisted essentially of the board's argument that arbitration was premature and, further, that the extended total disability provision in the contract was ultra vires and unenforceable. The trial judge's oral opinion follows in its entirety:
I would have to take the view, Mr. Rubin, and Mr. Birnbaum, that whether exhaustions of intermediary grievance steps, whether there has been an exhaustion is itself an arbitrable question, and that the denial of the extended sick leave related to the terms and conditions of employment is an arbitrable question.
The amendment to the PERC law vested that within the scope of arbitration as against the relief under Title 18.
Since the board does not argue on appeal the issue of exhaustion of administrative remedies, we deem it abandoned. Klotz v. Lee, 36 N.J. Super. 6, 12 (App. Div. 1955), app. dism. 21 N.J. 148 (1956).
*240 The disputed provision for extended total disability leave is contained in Article XIV, paragraph G, of the contract. Total disability is defined in it as that which (a) results from bodily injuries or disease, and (b) wholly prevents the employee from engaging in his regular occupation or assuming duties assigned by his superior, taking into consideration the nature and degree of the disability.[2] The employee must be under the care of a physician. Eligible employees may apply for benefits "only after the maximum sick leave days, determined by the employee, have been used to cover absence resulting from his total disability." An elaborate method of calculating benefits is established in subparagraph 4:
a. The amount and duration of such benefits shall be determined by the employee's curent salary, length of service, and the number of sick days utilized prior to the commencement of this benefit.
b. The amount of daily benefits shall be determined in the following manner:
1. The basic daily salary shall be computed by dividing the annual salary by 260.
2. Benefit payments shall be increased by 1/2% above the basic 45% payment for each sick day used after the first 12 working days of total disability and prior to the commencement benefit payments; e.g., an employee used 30 sick days after the first 12 working day waiting period to cover his absence under this program. On the basis of 1/2% for each of these days, the percentage factor would be added to the basic 45%, or 60%. Employees in this case would be entitled to 60% of his monthly contract salary.
c. Daily benefit payments shall not exceed 65% of an employees regular daily salary.
d. The number of days that benefits shall be payable shall be determined by dividing the total number of days of service as an employee by 4. Except that benefits shall not be payable for a period of more than 1 calendar year, or 260 working days.
*241 e. In no case shall benefits be payable concurrently with payments received by an employee for retirement or disability under the Social Security Program or any state employees or teachers pension plan.
f. Benefits under this program shall be reduced by the amount of any Workmen's Compensation payable.
g. Table for computation of percentage of daily benefits:

 Sick leave used after Percentage factor to be
 the first 12 working applied in computing daily
 days of total disability payments under this benefit
 program
 1 45.5
 2 46
 3 46.5
 4 47
 5 47.5
 continues to
 35 62.5
 36 63
 37 63.5
 38 64
 39 64.5
 40 65

* * * * * * * *
The contract further provided that the board "may, in its discretion, extend the above sick leave policy in individual cases."
The board maintains that the subject of leaves of absence for its employees is governed by pertinent provisions of the Education Law (Title 18A) and that the awarding of benefits for absences because of illness or injury beyond the allowed annual and accumulated sick leave periods is a matter which the statute vests in its discretion, to be exercised on a case-by-case basis; consequently, the contractual provision granting such extended benefits to any qualifying employee as a matter of right exceeded its authority.
Chapter 30 of Title 18A (N.J.S.A. 18A:30-1 through 7) deals with leaves of absence for employees of boards of education. It allows all employees sick leave with full pay for a minimum of ten school days in any school year (N.J.S.A. 18A:30-2), sick leave being defined, to the extent pertinent *242 here, as "absence from his or her post of duty, of any person because of personal disability due to illness or injury" (N.J.S.A. 18A:30-1).[3] Accumulation of unused sick leave is authorized (N.J.S.A. 18A:30-3). There is also a provision for the payment of full salary for up to one calendar year, without having the same charged against sick leave, to any employee unable to work because of personal injury caused by an accident arising out of and in the course of the employment, less the amount of any worker's compensation award made for temporary disability (N.J.S.A. 18A:30-2.1).[4]
The sections on which the board relies to support its ultra vires argument are N.J.S.A. 18A:30-6 and 7  in particular the former, which provides that in case of absence exceeding the annual and accumulated sick leave,
* * * the board of education may pay any such person each day's salary less the pay of a substitute, if a substitute is employed or the estimated cost of the employment of a substitute if none is employed, for such length of time as may be determined by the board of education in each individual case. A day's salary is defined as 1/200 of the annual salary. [Emphasis supplied]
Section 7 recognizes the right of the board of education
* * * to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, or to grant sick leave over and above the minimum sick leave as defined in this chapter or allowing days to accumulate over and above those provided for in section 18A:30-2, except that no person shall be allowed to increase his total accumulation by more than 15 days in any one year.
*243 These sections are deemed by the board to preclude it from negotiating a blanket contractual provision under which eligible employees are entitled to extended sick leave benefits as a matter of right. It asserts that its position is bolstered by determinations of both the State Commissioner of Education and the Public Employment Relations Commission (at least, as to the latter, with respect to contracts entered into prior to 1974).[5]
The association disagrees. Its thesis is that the subject of sick leave relates to terms and conditions of employment and is therefore a proper subject for negotiation, and under the contract's grievance procedure, is arbitrable. Although the association's reasoning is not entirely clear, we assume its position to be that the discretionary authority of the board under N.J.S.A. 18A:30-6 and 7 is not a bar to a negotiated scheme for extended sick leave or other authorized absences such as the one involved in this case.
Unquestionably, sick leave or other leaves of absence are matters that directly and intimately affect the terms and *244 conditions of employment. Burlington Cty. Col. Fac. Ass'n. v. Bd. of Trustees, 64 N.J. 10, 14 (1973), and, as such, would ordinarily be a subject of mandatory negotiation between a public employer and the duly authorized representative of its employees. N.J.S.A. 34:13A-5.3. For self-evident reasons, we are not concerned on this appeal with matters predominantly of major educational policy which would be within the board's exclusive prerogative. Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17, 25-26 (1973). The question to be resolved is whether or to what extent the negotiability of a term and condition of employment, in this case extended sick leave benefits, which otherwise would be mandated by N.J.S.A. 34:13A-5.3, is circumscribed by a specific statute on the subject in Title 18A. More narrowly, it is whether in the matter of such extended leaves of absence the Legislature has specifically clothed boards of education with a managerial prerogative or discretion which they may not bargain away despite their statutory responsibility under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., "of negotiating in good faith with representatives of their employees with respect to those matters which intimately and directly affect the work and welfare of their employees." Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n., supra.
A recurrent problem affecting the labor relations of boards of education and teacher associations has been the potentiality of conflict between N.J.S.A. 34:13A-1 et seq. and the Education Law (Title 18A). When the contract here involved was entered into, the Employer-Employee Relations Act expressly stated that no provision in the act shall "annul or modify any statute or statutes of this State." N.J.S.A. 34:13A-8.1. The Dunellen court took cognizance of this "strong qualifying statement," observing that "it is our clear judicial responsibility to give continuing effect to the provisions in our Education Law (Title 18A) without, however, frustrating the goals or terms of the Employer-Employee Relations Act * * *," 64 N.J. at 24-25. Thus, as we indicated *245 in Red Bank Bd. of Ed. v. Warrington, 138 N.J. Super. 564, 571-572 (App. Div. 1976), where general provisions in the Employer-Employee Relations Act and the Education Law may bear on the same subject, the question is not so much which prevails over the other, but how the two can be harmonized so as to give sensible effect to both and not to "thwart and nullify the legislative design expressed in the New Jersey Employer-Employee Relations Act."
But, as to possible conflicts between the Employer-Employee Relations Act and specific provisions in the Education Law, the court said in Dunellen:
New Jersey's laws relating to education have had a long-standing provision of specific nature dealing with tenure teachers and their dismissal.

* * * * * * * *
They have had an equally long-standing provision vesting statutory jurisdiction in the Commissioner of Education over controversies arising under the school laws which have traditionally included dismissal proceedings against tenure teachers. * * * When the Employer-Employee Relations Act * * * was passed * * * there was a blanket statement in Section 10 to the effect that no provision in the Employer-Employee Relations Act shall "annul or modify any statute or statutes of this State." N.J.S.A. 34:13A-8.1. In the light of this strong qualifying statement and, absent further clarifying legislation, we are not prepared to construe the general provision in Section 7 (N.J.S.A. 34:13A-5.3) authorizing the parties to agree on grievance procedures providing for "binding arbitration as a means for resolving disputes," as embodying legislative contemplation that the parties may agree on such arbitration in total replacement of the Commissioner's hearing of dismissal proceedings now required by the express terms of N.J.S.A. 18A:6-10. * * * * [64 N.J. at 28-29]
The import of the above seems to be that the general provisions of the Employer-Employee Relations Act relative to negotiating on matters affecting terms and conditions of employment should yield to specific sections of the Education Law dealing with the subject. This accords with well-settled law that where there is a conflict between a general statute and a specific statute on the same subject, the latter prevails. Kingsley v. Wes Outdoor Advertising Co., *246 55 N.J. 336, 339 (1970). See Red Bank Bd. of Ed. v. Warrington, supra 138 N.J. Super. at 571. Further support is found in Englewood Bd. of Ed. v. Englewoad Teachers, 64 N.J. 1, 7 (1973), in which the court said that a board of education could not agree on hours or compensation of teachers in violation of specific terms of the education laws or in violation of specific departmental rules or regulations.
We do not mean to imply that nothing pertaining to sick leave or other leaves of absence may be negotiated merely because the subject is covered by N.J.S.A. 18A:30-1 et seq. We are certain that there is ample room for negotiation on particular matters. But we need not stake out the boundaries of that which is mandatorily negotiable within the framework of that statute. Those issues are not before us. Furthermore, the statutory right of an employee to the payment of salary for up to one year during an absence occasioned by a job connected disability, without having the same charged against annual or accumulated sick leave, is not involved here. Our concern is over the payment of salary, in whole or in part, for prolonged absence beyond the allowable annual and accumulated sick leave. As to such payment, the controlling statute, N.J.S.A. 18A:30-6, plainly leaves the matter to the discretion of the local board of education, which may pay any such person each day's salary, less the pay or estimated cost of a substitute, for such length of time as may be determined by the board of education in each individual case.
By granting its employees extended total disability leave benefits as a matter of right, the board in this case surrendered its statutory obligation to deal with each case on an individual basis. We are convinced that in adopting the Employer-Employee Relations Act the Legislature did not contemplate that local boards of education could or would abdicate their statutorily imposed management responsibilities. Cf. Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra, 64 N.J. at 25. As we recently held in In re Englewood *247 Bd. of Ed., 150 N.J. Super. 265 (App. Div. 1977), where the subject matter sought to be negotiated or arbitrated is left to the managerial discretion of the school board by legislative mandate, any agreement to the contrary is invalid and unenforceable. See also, Union Cty. Bd. of Ed. v. Union Cty. Teachers Ass'n, 145 N.J. Super. 435 (App. Div. 1976); Clifton Teachers v. Clifton Bd. of Ed., 136 N.J. Super. 336 (App. Div. 1975). Cf. Patrolmen's Benev. Ass'n v. Elizabeth, 146 N.J. Super. 257, 261 (App. Div. 1976).[6]
The association raises the further point that if N.J.S.A. 18A:30-6 should be held to apply to contracts antedating the effective date of the 1974 amendments (L. 1974, c. 123) to the Employer-Employee Relations Act, then we should take note of the fact that a new contract containing the same provisions was entered into by the parties on June 30, 1976, and that the grievance was filed after that date. The argument is advanced that the amendments shed "a new light on the entire matter." We do not agree.
Reliance is placed upon the deletion from N.J.S.A. 34:13A-8.1 of the clause, "nor shall any provision hereof annul or modify any statute or statutes of this State," and the substitution of the clause, "nor shall any provision hereof annul or modify any pension statute or statutes of this State." But the change in language, undoubtedly the Legislature's response to the Dunellen court's hesitancy to construe the act more expansively in view of the "strong qualifying statement" then contained in the statute, "absent further clarifying legislation," 64 N.J. at 29, did not, in our view, effect a wholesale repeal or modification of those *248 portions of Title 18A which deal with specific matters relating to terms and conditions of employment.[7]
It is settled law that in the absence of an express repealer in the statute itself, indication of the intention of the Legislature to repeal a prior act or any portion thereof must be clear and compelling. Loboda v. Clark Tp., 40 N.J. 424, 435 (1963); Henninger v. Bergen Cty. Bd. of Chosen Freeholders, 3 N.J. 68, 71 (1949). The court said in Swede v. City of Clifton, 22 N.J. 303 (1956):
The question of repeal is essentially one of legislative intention; and there is a presumption as a matter of interpretive principle and policy against an intent to effect a repeal by legislation by mere implication. The purpose to do so must be free from all reasonable doubt. Repeals by implication are not favored in the law; and where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision. [at 317, citations omitted]
It is true, of course, that this doctrine is merely an aid in ascertaining legislative intent, and that "a law cannot be evaluated in a vacuum, but must be considered in the context in which it was adopted." N.J. State P.B.A. v. Morristown, 65 N.J. 160, 165 (1947). But we deem it significant *249 here that the Legislature, though invited by the court to express itself more explicitly on the subject of statutes containing related or parallel matters, chose not to employ language from which an intent to repeal or modify could be implied, leaving it instead to the courts to determine on a case-by-case basis how the statutes may coexist harmoniously. Cf. Red Bank Bd. of Ed. v. Warrington, supra.
Accepting the association's premise that the case before us should be viewed in the light of N.J.S.A. 34: 13A-8.1 as amended, we nevertheless find nothing in N.J.S.A. 18A:30-6 which is so inconsistent with or repugnant to the general provisions of N.J.S.A. 34:13A-5.3 relating to collective negotiations concerning terms and conditions of employment as to preclude any reasonable possibility of their standing together. Cf. Garfield City Council v. Perrapato, 117 N.J. Super. 184, 193 (App. Div. 1971). We know of no reason, and none has been suggested to us, why the Legislature may not choose to include as part of the managerial prerogative and discretion of a board of education a particular matter which would otherwise be mandatorily negotiable as a term or condition of employment.
We conclude that the contractual provision for extended total disability leave exceeded the authority of the Board and is invalid and unenforceable. There was thus no issue to be submitted to arbitration. The validity of any other provision in the contract relating to personal and sick leave is not before us and we express no opinion thereon.
The order under review is reversed; the arbitration sought by the association is permanently restrained.
NOTES
[1] It is to be noted that Columbis petitioned for and was awarded workers' compensation benefits. In response to our inquiry, we have been informed by the board's attorney that Columbis received his full salary through July 31, 1975, and that thereafter, during the periods he did not work, full pay was continued, in lieu of accumulated sick leave and vacation time, until April 27, 1976.
[2] Elsewhere in Article XIV of the contract "sick leave" is defined to mean absence of an employee because of, among other things not significant here, non job-connected illness or accident. We assume it is so defined because under N.J.S.A. 18A:30-2.1 absence of an employee because of job-connected illness or injury for up to one calendar year is not chargeable to annual or accumulated sick leave.
[3] The statutory definition of "sick leave" does not exclude job-connected illness or injury, as does the definition contained in Article XIV of the contract (see footnote 2, supra). We doubt that the parties may fashion a definition of sick leave that is more restrictive than that set forth in the statute.
[4] It is not contended that the injured employee here failed to receive the benefits accorded him by this section of the statute.
[5] The board cites Hutchenson v. Totowa Bd. of Ed., 1971 S.L.D. 512, aff'd by the State Board of Education, 1972 S.L.D. 672, in which the Commissioner of Education ruled that the provisions of N.J.S.A. 18A:30-7 "may not be embodied [by a board of education] as a statement of policy equally applicable as a blanket provision for all members of a staff, but may only be made applicable after scrutiny by the board `of each individual case' as specifically required by the statute." Another citation is a similar holding with respect to N.J.S.A. 18A:30-6 (formerly N.J.S.A. 18:13-23) in Marriott v. Hamilton Tp. Bd. of Ed., 1949-1950 S.L.D. 57, aff'd 1950-1951 S.L.D. 69.

In two decisions also cited by the board, the Public Employment Relations Commission held that contracts entered into prior to the adoption of the 1974 amendments (L. 1974, c. 123) to the New Jersey Employer-Employee Relations Act (N.J.S.A. 34:13A-1 et seq.) were governed by applicable substantive law in Title 18A, and that provisions for automatic extended sick leave benefits were inconsistent with N.J.S.A. 18A:30-6. Rockaway Tp. Bd. of Ed., PERC No. 76-44, 2 N.J. Pub. Empl. Reporter 214 (1976); Matawan Regional School Dist. Bd. of Ed., PERC NO. 77-23, 2 N.J. Pub. Empl. Reporter 350 (1976).
[6] Beyond what we have said on the subject, it is also to be noted that whereas the amount of extended disability leave benefits in the contract is determined by a schedule based on the employee's current salary, length of service and number of prior sick days utilized, but not to exceed 65% of the employee's regular daily salary (reduced by the amount of any workers' compensation payable), under N.J.S.A. 18A:30-6 the amount payable is each day's salary less the pay or estimated cost of a substitute.
[7] The purpose of the amendment, according to the sponsor's statement appended to the bill, was to provide some clarification of the scope of negotiations between public employees and employee organizations, the importance of which was emphasized in Burlington Cty. Col. Fac. Ass'n. v. Bd. of Trustees, supra; and Dunellen Bd. of Ed. v. Dunellen Ed. Assn., supra. It was intended

* * * to give greater guidance to PERC [Public Employment Relations Commission] and to the courts in making the determination whether a particular issue is within the scope of negotiations. Section 6 [N.J.S.A. 34:13A;8.1] provides that guidance without enacting a list of negotiable subjects. Questions concerning the scope of negotiations will still be resolved on a case-by-case basis, but both the administrative agency charged with enforcing this act and the courts will be aided by the statutory standard that the impact on terms and conditions of employment of the exercise of statutory duties by a public employer is negotiable.