NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1611-17T1

MOSHE ROZENBLIT, and
WON KYU RIM,

      Plaintiffs-Appellants/
      Cross-Respondents,

v.

MARCIA V. LYLES, in her
official capacity as Superintendent
of the Jersey City Board of Education;
VIDYA GANGADIN, in her official
capacity as President of the
Jersey City Board of Education; and
JERSEY CITY PUBLIC SCHOOLS
OF THE CITY OF JERSEY CITY,

      Defendants,

and

JERSEY CITY BOARD OF
EDUCATION, and JERSEY CITY
EDUCATION ASSOCIATION, INC.,

      Defendants-Respondents/
      Cross-Appellants.
_____

| APPROVED FOR PUBLICATION |
| :---: |
| **August 21, 2019** |
| **APPELLATE DIVISION** |

Argued March 27, 2019 – Decided August 21, 2019

Before Judges Fuentes, Vernoia, and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000002-17.

Jonathan Riches (Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute) of the Arizona bar, admitted pro hac vice, argued the cause for appellants/cross-respondents (Law Offices of G. Martin Meyers, PC, and Jonathan Riches, attorneys; Justin A. Meyers, Aditya Dynar (Scharf-Norton Center for Constitutional Litigation at the Goldwater Institute) of the Arizona bar, admitted pro hac vice, and Jonathan Riches, on the briefs).

Kenneth I. Nowak argued the cause for respondent/ cross-appellant Jersey City Education Association, Inc. (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Richard A. Friedman and Flavio L. Komuves, on the briefs).

David I. Solomon argued the cause for respondent/ cross-appellant Jersey City Board of Education (Florio Perrucci Steinhardt & Capelli, LLC, attorneys, join in the brief of respondent/cross-appellant Jersey City Education Association, Inc.).

Mark Miller argued the cause for amicus curiae Pacific Legal Foundation (Mark Miller and Deborah J. LaFetra (Pacific Legal Foundation) of the California bar, admitted pro hac vice, attorneys; Mark Miller and Deborah J. LaFetra, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

2

This appeal challenges the legality of a section in the collective bargaining agreement (CBA) entered into between the Jersey City Board of Education (Board) and the Jersey City Education Association, Inc., (JCEA) for the period covering September 1, 2013 to August 31, 2017. Specifically, as construed by the JCEA and the Board, Article 7, Section 7-2.3 of the CBA denoted "Association Rights," requires the Board to pay the salaries and benefits of two teachers selected by the members of the JCEA to serve as "president . . . and his /her designee," and to allow them to devote all of their work-time to the business and affairs of the JCEA. The Board must also continue to grant the president of the JCEA "adequate office and parking facilities."

Section 7-2.3 does not on its face address whether the president of the JCEA and his or her designee are entitled to receive their full salaries and benefits as teachers during the time they exclusively serve the needs of the JCEA. It is undisputed, however, that the two teachers selected by the members of the JCEA to serve in this capacity received their full salaries and benefits from the Board during the three-year term of this CBA. Moreover, the Board conceded during oral argument before this court that this practice predates the term of this particular CBA.

We now hold this practice is not sanctioned by Title 18A and declare this Section of the CBA unenforceable as against public policy.

I

Plaintiff Moshe Rozenblit is a resident of Jersey City who pays real estate taxes to the City. Plaintiff Won Kyu Rim[1] is a resident of this State who pays New Jersey income tax. Plaintiffs argue this contractual arrangement by the Board violates Article VIII, § 3, ¶ 3 of the New Jersey Constitution, which provides: "No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever." They also argue that N.J.S.A. 18A:30-7, which permits the Board to pay the salary of an employee in cases of absence not constituting sick leave, does not authorize the Board to reassign two teachers to devote their entire professional time as the "exclusive and sole bargaining representative[s] for all certificated personnel, attendance counselors, and teacher assistants" employed in this school district.

Amicus Curiae Pacific Legal Foundation's legal argument echoes plaintiffs' constitutional argument. Amicus also argues that the General Equity

---

[1] Plaintiffs' standing to bring this action is unchallenged. See Stubaus v. Whitman, 339 N.J. Super. 38, 48-51 (App. Div. 2001).

Judge's finding that the Board "receives a substantial benefit from employing the [release] employees in the form of facilitating labor peace" is not supported by the record. Amicus notes that on March 16, 2018, JCEA members went on strike as a negotiating tactic, in defiance of our State's long-established common law principle denying all public employees, including school district employees, the right to strike. See In re Block, 50 N.J. 494, 499-500 (1967).

Relying on Roe v. Kervick, 42 N.J. 191 (1964), the JCEA argues plaintiffs have not presented sufficient grounds to impugn the constitutionality of this contractual arrangement on its face. The Board did not submit its own independent brief in this appeal, opting instead to adopt the JCEA's position. The Chancery Division, General Equity Part rejected plaintiffs' argument. The judge applied the Court's holding in Roe and found "that these release time provisions serve the dual public purposes of facilitating the collective negotiations process and keeping labor peace in the Jersey City Public Schools."

II

We start our analysis guided by the long-settled jurisprudential principle that admonishes judges to "strive to avoid reaching constitutional questions unless required to do so." In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 461 (2013) (quoting Comm. to Recall

5                                                      A-1611-17T1

Menendez from the Office of U.S. Senator v. Wells, 204 N.J. 79, 95 (2010)).

Here, we are satisfied there are sufficient statutory grounds to definitively decide this appeal. We thus decline to reach the constitutional arguments advanced by plaintiffs and amicus.

As a creature of the State, a local board of education "may exercise only those powers granted to them by the Legislature -- either expressly or by necessary or fair implication." Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 79 N.J. 574, 579 (1979); see also Edmondson v. Bd. of Educ. of Elmer, 424 N.J. Super. 256, 261 (App. Div. 2012). We are satisfied that in adopting N.J.S.A. 18A:30-7, the Legislature did not expressly or implicitly intend to authorize the Board to enter into the contractual arrangement reflected in Article 7, Section 7-2.3 of the CBA.

N.J.S.A. 18A:30-7 provides:

> Nothing in this chapter shall affect the right of the board of education to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, or to grant sick leave over and above the minimum sick leave as defined in this chapter or allowing days to accumulate over and above those provided for in section [N.J.S.A.] 18A:30-2, except that no person shall be allowed to increase his total accumulation by more than 15 days in any one year.
>
> [(Emphasis added).]

The Legislature adopted this statute effective January 11, 1968. Fifty-one years later, our research has revealed only one reported opinion from this court that tangentially addressed the issues raised in this appeal. In Board of Education of Piscataway Township v. Piscataway Maintenance & Custodial Association, this court addressed the legality of a provision for extended total disability benefits contained in a contract between the Board of Education of the Township of Piscataway and the Piscataway Maintenance & Custodial Association and whether it exceeded the board of education's authority under Title 18A. 152 N.J. Super. 235, 238 (App. Div. 1977). The legal question in Piscataway concerned whether an agreement to pay the salary of an employee, in whole or in part, for prolonged absence beyond the allowable annual and accumulated sick leave in N.J.S.A. 18A:30-6 violated the school board's managerial prerogative. Id. at 246. We held that "[b]y granting its employees extended total disability leave benefits as a matter of right, the board in this case surrendered its statutory obligation to deal with each case on an individual basis." Ibid.

N.J.S.A. 18A: 30-7 to -13 addresses additional sick leave and other forms of leaves of absence such as "accrued vacation and sick leave bank." For example, N.J.S.A. 18A:30-8 provides:

Any school district employee who qualifies as a member of the United States team for athletic competition on the world, Pan American or Olympic level, in a sport contested in either Pan American or Olympic competitions, <u>shall be granted</u> a leave of absence with pay and without loss of rights, privileges and benefits and without interruption of membership in any retirement system for the purpose of preparing for and engaging in the competition. <u>The paid leave granted pursuant to this act shall be no more than 90 calendar days in 1 year or the combined days of the official training camp and competition, whichever is less</u>.

Any school district which grants employees leaves of absence pursuant to the provisions of this act shall be reimbursed by the State, for the full amount of the actual cost of employing substitutes for said employees.

[(Emphasis added).]

N.J.S.A. 18A:30-9 and N.J.S.A. 18A:30-9.1 limit the accumulation of unused vacation time. N.J.S.A. 18A:30-10 sanctions the establishment of a "sick leave bank" to permit employees to voluntarily donate "sick leave days or any other leave time" to a colleague in need. The establishment of a sick leave bank must be "agreed upon by the board and the majority representative." Sick leave banks are administered by a six-member committee comprised of three representatives from the board of education and three representatives "selected by the majority representative or majority representatives of those employees of the board who are eligible to participate in the sick leave bank." N.J.S.A.

A-1611-17T1

18A:30-11. The Legislature also made clear that the benefits provided through and by the sick leave bank did not authorize boards of education to reduce or negatively affect more favorable sick leave, disability pay or other benefits obtained through collective bargaining agreements, or prohibit future negotiations to enhance these benefits. N.J.S.A. 18A:30-12. Finally, the Legislature directed how these statutory provisions should be construed:

> No provision of this act [N.J.S.A. 18A:30-10 et seq.] shall be construed as limiting the authority of a board of education to provide an employee with additional days of salary pursuant to [N.J.S.A] 18A:30-6 after all sick leave available to the employee, including days provided under this act, has been used.
>
> [N.J.S.A. 18A:30-13.]

"The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). Furthermore, "words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. Courts must also construe the words in a statute "in context with related provisions so as to give sense to the legislation as a whole." Garden State Check Cashing Serv. v. State Dep't of

Banking & Ins., 237 N.J. 482, 489 (2019) (quoting Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018)).

Mindful of the principles of statutory construction, we conclude that N.J.S.A. 18A:30-7 does not empower the Board in this case to continue to pay the salaries and benefits of the president of the JCEA and his or her designee, while they devote their entire work-time to the business and affairs of the union. A plain reading of the operative language in N.J.S.A. 18A:30-7 shows the Legislature authorized the Board:

> to fix either by rule or by individual consideration, the payment of salary in cases of absence not constituting sick leave, or to grant sick leave over and above the minimum sick leave as defined in this chapter or allowing days to accumulate over and above those provided for in section [N.J.S.A.] 18A:30-2 . . . .

The employees who fall within this class must be absent from work for reasons unrelated to sick leave. Here, the two teachers who serve the JCEA as president and designee were not absent. They reported to work every day to an office located on property provided by the school district to attend to the affairs of the JCEA. Jersey City is our State's second largest city. Its school district operates a vast, educationally diverse school system. As of May 2019, the district employed 2,993 instructional staff, 1,317 non-instructional personnel,

10

and 151 administrators, and enrolled 26,993 students.[2] Its brick and mortar educational infrastructure consists of fourteen elementary schools accommodating children from pre-kindergarten to the fifth grade; thirteen grammar schools accommodating children from pre-kindergarten to eighth grade; four middle schools accommodating children from sixth to eighth grade; six high schools; one secondary school accommodating children from sixth to twelfth grade; one Alternative Program, accommodating children from sixth to twelfth grade; and three Early Childhood Centers.[3]

The two teachers selected by the members of the JCEA to serve as president and designee, are required to travel throughout the school district to attend meetings, participate in disciplinary matters to advocate the interests of JCEA members, attend to the affairs of the union, and negotiate the terms of the next CBA. These two teachers, who are paid their fulltime salaries, do not report to any school administrator or school district official, and are not subject to any administrative oversight. In short, while serving as president and designee of

[2] See Quick Links, Vital Facts, JCBOE.ORG, www.jcboe.org/boe2015/index.php?option=com_content&view=article&id=16 6&Itemid=650 (last visited Aug. 13, 2019).

[3] See Schools, JCBOE.ORG, www.jcboe.org/boe2015/index.php?option=com_content&view=article&id=44 9&Itemid=1090 (last visited Aug. 13, 2019).

11                                                          A-1611-17T1

the JCEA, these two teachers act exclusively as labor leaders. Despite this, their salaries and benefits are commensurate to the teachers who serve the day-to-day educational needs of the students of the district.

N.J.S.A. 18A:30-7, which is the only authority the Board and the JCEA cite in support of their position, does not authorize the Board to disburse public funds in this fashion. However, the CBA at issue here contains several sections that exemplify the proper exercise of the Board's statutory authority to grant leaves of absence for various reasons unrelated to sick leave. Under Article 31, denoted "Other Absences" when there is a death in the teacher's family, "the teacher shall be excused without loss of pay or accumulated leave for death related absences taken within seven (7) calendar days of the date of death." This Section also allows the faculty of an entire school, or if not practical a representative number of the faculty, a paid half-day off to attend the funeral services of an active colleague. The Board may also authorize paid absence to an employee who is quarantined as ordered by an official action. Article 31 also provides for paid absence in response to a court order.

Article 33, denoted "Sabbatical Leave for Study or for Rest and Recuperation," authorizes the Board to grant a leave of absence for rest and recuperation. However, a teacher on leave of absence for rest and recuperation

receives only one-half of his or her "monthly salary for each month during the continuance of such leave." A leave of absence for study or for rest and recuperation must begin on September 1st and is limited to twelve months. Teachers seeking a leave of absence for rest and recuperation must submit their application to the Superintendent "at least three (3) months before the beginning of the desired leave."

Article 33 also allows a teacher to apply for a leave of absence to study. This application should be presented to the Superintendent four months in advance. A teacher granted this academic leave of absence must also "sign a contract to serve in the public schools of the District for at least two (2) years after the expiration of a leave." If the teacher is unable to honor this contractual obligation, "the teacher shall reimburse the School District in direct proportion to the unfilled time except in case of death or permanent disability." (Emphasis added).

Finally, teachers who are granted a leave of absence for rest and recuperation or for study, must refrain from engaging in any remunerative occupation during the continuance of the leave of absence. Teachers on leave to study must present to the Superintendent documentation attesting to their attendance and successful completion of the course of study offered by these

 A-1611-17T1

academic institutions. Violations of these requirements will be considered by the Board to constitute evidence of conduct unbecoming a teacher. A maximum of fifteen "teaching staff members" are permitted to take a sabbatical or leave for rest and recuperation.

The public policy underpinning these leaves of absence is reflected in the reasonableness of the underlying bases for the requests and in the reciprocal benefits they confer. Both the Board and the teacher benefit from these hiatuses of limited-duration. They serve to relieve the teacher from the pressures and emotional exhaustion experienced throughout a lengthy career. The teacher is given the opportunity to separate from his or her day-to-day activities without risk of being unemployed; the Board gives a valuable and experienced teacher the opportunity to "refresh" and return to the profession with a renewed sense of commitment. By contrast, the contractual arrangement which permits the two teachers to devote their entire professional time to exclusive service of the interests of the JCEA confers no reciprocal benefit to the school district. In fulfilling their duties to the JCEA, the teachers' role is to advocate the interests of the JCEA, even when such interests may conflict with the educational and administrative polices of the Board. The JCEA does not cite to any statutory authority permitting the Board to pay the salaries of teachers whose job duties

14

are exclusively devoted to the service of another organization, in this case the JCEA.

Article 7, denoted "Association Rights" aptly and candidly describes its only purpose – to assure and promote the interests of the JCEA. Article 7 contains a total of eleven sections. We limit our recitation to the four sections most germane to the issue raised here:

> Section 7-1: The [JCEA] shall have the right to distribute, through the use of the teachers' mailboxes, material dealing with the proper and legitimate business of the [JCEA].
>
> Section 7-2: The principal and/or his/her designee shall be notified prior to the distribution of such materials.
>
> Section 7-2.1: Representatives of JCEA, NJEA, and NEA shall have the right to enter the schools to meet with teachers during their preparation periods or lunch periods or after school to carry our appropriate [JCEA] business.
>
> Section 7-2.2: The president or his [or her] designee shall have the right to enter the school and meet with teachers at any time. This right shall not be abused.
>
> Section 7-2.3: <u>The president of the JCEA and his/her designee, shall be permitted to devote all of his/her time to the [JCEA] business and affairs. The President shall continue to be granted adequate office and parking facilities</u>.

Section 7-2.4: The president's designee shall carry out appropriate [JCEA] business, provided that the aforesaid business shall not disrupt the educational process. The designee shall <u>notify</u> the Superintendent or his/her designee as to where and when he/she is carrying out such [JCEA] business during school time.

[(Emphasis added).]

We emphasize Section 7-2.3 to show the absence of any language obligating the Board to pay the salaries and benefits of the two teachers serving in this capacity for the JCEA. Inexplicably, the Board does not dispute that the language in Section 7-2.3 implicitly requires the Board to pay these two teachers their full salaries and benefits. We find no textual support in the CBA for this conclusion and no legal authority in Title 18A for the Board to sanction this disbursement of public funds.

In N.J.S.A. 18A:30-8, the Legislature clearly stated that a school district employee who qualifies as a member of the United States team for athletic competition on the world level "shall be granted a leave of absence with pay and without loss of rights, privileges and benefits and without interruption of membership in any retirement system for the purpose of preparing for and engaging in the competition." The Legislature made equally clear the limitations of this public generosity: "paid leave granted pursuant to this act

16

shall be no more than 90 calendar days in 1 year or the combined days of the official training camp and competition, whichever is less." Ibid.

The intent of the Legislature in N.J.S.A. 18A:30-7 was also made clear by the conspicuous omission of language similar to N.J.S.A. 18A:30-8. We thus hold Section 7-2.3 of the CBA covering the period from September 1, 2013 to August 31, 2017, is against public policy and unenforceable. The actions taken by the Board that caused the disbursement of public funds pursuant to Section 7-2.3 were ultra vires.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1611-17T1