120 N.J. Super. 564 (1972)
295 A.2d 380
THE BOARD OF EDUCATION OF THE TOWNSHIP OF ROCKAWAY IN THE COUNTY OF MORRIS, A BODY CORPORATE OF NEW JERSEY, PLAINTIFF,
v.
ROCKAWAY TOWNSHIP EDUCATION ASSOCIATION AND JOSEPH YOUNGMAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 25, 1972.
*565 Mr. Alten W. Read, attorney for Plaintiff.
Mr. George J. Benson, attorney for defendants.
Mr. Thomas P. Cook, attorney for New Jersey School Boards Association, amicus curiae.
Mr. Cassel R. Ruhlman, Jr., attorney for New Jersey Education Association, amicus curiae.
*566 STAMLER, J.S.C.
Plaintiff is the Board of Education of the Township of Rockaway in Morris County. Defendants are Rockaway Township Education Association (hereinafter RTEA) and Joseph Youngman, a teacher in the employ of the Board. The Board asks that defendants be enjoined from proceeding before the American Arbitration Association on the question of interference with the "academic freedom" of the teacher in violation of a contract between the Board and RTEA.
The New Jersey School Boards Association (an alliance of boards of education throughout the State) and The New Jersey Education Association (an alliance of teacher's associations) moved and were granted leave to appear amici curiae.
The Board filed a verified complaint and defendants filed a verified answer and counterclaim. The complaint and answer are at odds in only one minor nonrelevant disputed occurrence. This will be noted infra. Since there are no material facts in dispute and there is nothing to be added by a trial, this court will consider the matter as if cross-motions for summary judgment were made.
On June 23, 1971 the Board and RTEA entered into a contract which provided for the terms and conditions of employment of teachers in the Rockaway Township School District. In February 1972 Youngman, a teacher of humanities, was directed by the superintendent of the school district not to conduct in his 7th grade class a previously announced "debate" on the subject of abortion. The 7th grade class is composed of 11- and 12-year-old children.
It is here that the parties' description of what was intended to take place differs: the complaint says that the debate was to be "on the pros and cons of abortion"; the counterclaim of RTEA denies "the pros and cons" allegation, but admits that the subject of the proposed debate was "the abortion laws". Both agree it was to be a debate. Debates require affirmative and negative views advocated by opposing speakers: which of the two was the precise title *567 is not relevant to the court's determination. For the purposes of this opinion, the subject matter was one and the same.
Defendants contend that the preclusion decision of the superintendent and its affirmance by the Board was a denial of "academic freedom" to defendants and a violation of Article XXVII, paragraph C of the collective bargaining contract between the parties.
Paragraph C reads as follows:
The Board and the Association agree that academic freedom is essential to the fulfillment of the purposes of the Rockaway Township School District. Free discussion of controversial issues is the heart of the democratic process. Through the study of such issues, political, economic or social, youth develops those abilities needed for functional citizenship in our democracy. Whenever appropriate for the maturation level of the group, controversial issues may be studied in an unprejudiced and dispassionate manner. It shall be the duty of the teacher to foster the study of an issue and not to teach a particular viewpoint in regard to it. [Emphasis supplied]
Defendants demanded of the Board that the issue of the alleged violation of Article XXVII, paragraph C, as well as the issue of academic freedom of a member of the teaching staff, be processed as a "grievance" before the American Arbitration Association as provided in the contract. Notice of its intention to proceed before the Arbitration Association was given to the Board. The Board filed its complaint seeking an injunction, asserting that the appropriate forum is a proceeding before the Commissioner of Education. RTEA and the teacher, by their counterclaim, seek specific performance of the arbitration provisions, contending that the American Arbitration Association is the tribunal of primary jurisdiction.
Article III, paragraph A(1) of the contract defines "grievance" as:
The term "grievance" means a complaint by an employee of the Association that, as to him, there has been a personal loss or injury because of an administrative decision affecting said employee, *568 or an unjust application, interpretation or violation of a policy, or agreement. The term "grievance" and the procedure relative thereto shall not apply to a complaint of a non-tenure teacher which arises by reason of his not being re-employed after only two years on probation.
It is clear that both the Board and RTEA agreed that "academic freedom" is essential to the fulfillment of the purposes of the school district. The heart of the problem is the fourth sentence in the quoted section of Article XXVII paragraph C:
* * * Whenever appropriate for the maturation level of the group, controversial issues may be studied in an unprejudiced and dispassionate manner.
This court takes judicial notice that the subject of "abortion," whether in moral or legislative concept, is controversial.
The collective bargaining agreement between the Board and RTEA contains no provision as to who is to determine "the maturation level," not of the teacher but of the "group" of students.
No reported case law is directly in point. Many law review articles have considered "academic freedom." The most recent are: "Developments in the Law-Academic Freedom," 81 Harv. L. Rev. 1045 (1968); Van Alstyne, "Constitutional Rights of Teachers and Professors," 1970 Duke L.J. 841 (1970); "Teachers and the First Amendment," 7 Williamette L.J. 435 (1971); Aldrich and Sommers, "Freedom of Expression in Secondary Schools," 19 Cleve. St. L. Rev. 165 (1970). Limited excerpts from context in each support the positions of the contending parties.
To determine "maturation level" requires expertise in education. One proposition upon which the authors of the articles cited above agree: a trial court is not so qualified.
This, then, places the obligation on either the teacher or the Board, or both. When disagreement arises, shall it be settled before a panel selected from the American Arbitration *569 Association or before the Commissioner of Education with review by the State Board of Education and thereafter the appellate courts?
The New Jersey Employer-Employee Relations Act, L. 1968, c. 303, requires a public employer, including a board of education, to negotiate with the majority representative of an appropriate unit of its employees concerning the terms and conditions of employment. Specifically to be negotiated is a grievance procedure. N.J.S.A. 34:13A-5.3. In N.J.S.A. 34:13A-8.1 the following appears:
Nothing in this act shall be construed to annul or modify, or to preclude the renewal or continuation of any agreement heretofore entered into between any public employer and any employee organization, nor shall any provision hereof annul or modify any statute or statutes of this State. [Emphasis added]
It cannot be argued, therefore, that Title 18A, "Education," insofar as it is concerned with relationship between boards, teachers and pupils, has been superseded. Even were this language eliminated from chapter 303, our Supreme Court has held that the general rule of statutory construction, in the absence of clear legislative direction to the contrary, requires a determination that a later statute will not be deemed to repeal or modify an earlier one, but all existing statutes pertaining to the same subject matter "are to be construed together as a unitary and harmonious whole, in order that each may be fully effective." Clifton v. Passaic County Board of Taxation, 28 N.J. 411, 421 (1958). Thus, the provisions of both Title 18A and chapter 303 must be read together so that both are harmonized and each is given its appropriate role.
The selection of courses to be presented to students and the subjects to be presented or discussed cannot be a "term or condition of employment." Defendants argue "there can be no doubt that the methods of selecting courses and even more clearly, the procedures and methods by which these courses are to be presented, may be negotiated at least in broad terms." This proposition is untenable.
*570 The Board is responsible for the production of a "thorough and efficient" school system (N.J. Const. (1947), Art. VIII, § IV, par. 1) and particularly the statutory obligation to provide "courses of study suited to the ages and attainments of all pupils." N.J.S.A. 18A:33-1. The Board has a continuing obligation placed upon it by the Legislature to adopt and alter courses of study.
In Wassmer v. Board of Education, Wharton, 1967 S.L.D. at 125-127, the Commissioner held that the School Law vests the management of the public schools in each district in the local boards of education. The Commissioner stated:
While the Commissioner would expect that all boards of education look to their professional employees for recommendations and guidance in matters in which educational judgments are to be made, the board is not compelled to accept the suggestions or advice it received, for it has the authority to make the ultimate determination. [at 127]
In Porcelli v. Titus, 108 N.J. Super. 301 (App. Div. 1970), certif. den. 55 N.J. 310 (1970), the following appears:
The public schools were not created, nor are they supported, for the benefit of the teachers therein, * * * but for the benefit of the pupils, and the resulting benefit to their parents and the community at large. [at 312]
The courts have recognized that public employees cannot make contracts with public agencies that are contrary to the dictates of the Legislature. Lullo v. International Association of Fire Fighters, 55 N.J. 409 (1970). Nor can public agencies such as a board of education "abdicate or bargain away their continuing legislative or executive obligations or discretion." Id., 440.
It is concluded, therefore, that if the contract is read to delegate to a teacher or to a teacher's union the subject of courses of study, the contract in that respect is ultra vires and unenforceable. It must therefore follow that the American Arbitration Association cannot be the sub-delegee *571 of the Board and of the teachers. Additionally, it is to be noted that the American Arbitration Association may be well qualified to "arbitrate" compensation, hours of work, sick leave, fringe benefits and the like, but they and their panels possess no expertise in arbitrating the maturation level of a 7th grade student in the elementary schools of Rockaway Township.
However, defendants who are dissatisfied with the action of the superintendent and the Board are not without a remedy. N.J.S.A. 18A:6-9 provides that the Commissioner of Education "shall have jurisdiction to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws * * *." On subsequent appeal, our appellate courts will have the benefit of the special experience of the administrative agencies operating in the vital area of education, especially of the young.
Defendants' counterclaim for specific performance and mandatory direction to plaintiff to submit to the jurisdiction and procedures of the American Arbitration Association is denied. Judgment for plaintiff on the Counterclaim.
The restraints heretofore entered against defendants enjoining them from proceeding before the American Arbitration Association will be made permanent without prejudice to defendants' right to proceed before the Commissioner if they so desire.
No costs either party.