DeALMEIDA, P.J.T.C.
The issue presented is whether N.J.SA. 54:3-27 and N.J.SA 54:51A-1 authorize this court to reduce a taxpayer’s ongoing local property tax payment obligation and eliminate interest and penalties associated with the reduced tax payments, even though all taxes and municipal charges due on the property were paid at the time that the complaint was filed. For the reasons stated more fully below, the court holds that N.J.SA. 54:3-27 and N.J.SA. 54:51A-1 do not authorize such relief and vest in this court the *469 limited authority to fix terms for the payment of taxes due and owing at the time that a complaint is filed and not for subsequent periods. Because all taxes and municipal charges due with respect to the property that is the subject of these appeals were paid when the complaints were filed, plaintiffs’ motion for an Order relaxing their local property tax payment obligations and relieving them from interest and penalties is denied.
I. Findings of Fact and Procedural History
The relevant facts are not in dispute and are largely procedural in nature. The property that is the subject of these appeals is a collection of parcels that constitute the Eagle Point oil refinery in West Deptford Township. The property has a long history of appeals, filed by various owners, dating back to 1988, which remain pending in this court. The reasons for the extended delay in the resolution of those matters are varied and the appeals currently are under heightened judicial management to bring them to an expeditious conclusion.
The property was purchased by plaintiffs, a group of related entities associated with Sunoco, Inc., in 2004 for $111,000,000. For tax year 2010, the total aggregate assessment on the property is $123,836,536. The township’s 2010 Chapter 123 average ratio is .5562. See N.J.S.A. 54:l-35a. Application of the average ratio to the assessment on the subject property results in a market value of $222,647,494. Included in this amount is an assessment of $26,260,436 for machinery and equipment used in the manufacture of petroleum products from crude oil. Property of this type is taxable pursuant to N.J.S.A. 54:4-1. Application of the average ratio to the assessment on the machinery and equipment results in a market value of $47,214,017.
On October 6, 2009, plaintiffs announced that all process units at the Eagle Point refinery would be idled indefinitely in an effort to reduce losses. At that time, the Eagle Point refinery had a capacity to refine and process approximately 150,000 barrels of sweet crude oil per day. Production from the refinery was shifted to two nearby facilities owned by plaintiffs or related entities. Approximately 400 employees were furloughed as a result of the *470 October idling of the facility. In November 2009, plaintiffs permanently shut down all process units and ceased all production at the Eagle Point refinery. Approximately 380 employees were terminated in conjunction with the shutdown.
Plaintiffs allege that a variety of global economic, regulatory, and competitive pressures caused the shut down of the Eagle Point refinery and east an ominous shadow on the industry’s future. Plaintiffs suggest that these forces affect the true market value of the subject property. Defendant does not contest these allegations in the context of the present motion. Even a cursory consideration of plaintiffs’ allegations reveals their striking complexity and make plain that the record before the court on plaintiffs’ motion is insufficient for factual findings regarding the reasons for the closing of the Eagle Point refinery and the impact that changes in the global petroleum market may have had on the true market value of the subject property. The inability of the court to make findings on these topics at this juncture, however, does not preclude resolution of plaintiffs’ motion. As is explained in greater detail below, the court lacks authority to grant the relief sought by plaintiffs, even if the factual allegations alleged in the moving papers are accepted as true.
By letter dated January 8, 2010, plaintiffs provided notice to the municipal tax assessor for West Deptford Township that the Eagle Point refinery ceased refining operations prior to December 31, 2009. The letter argued that the disabled refining machinery and equipment are no longer used to manufacture petroleum products from crude oil and are, as a result, no longer taxable pursuant to N.J.S.A. 54:4-1. The assessor did not respond to the letter or reduce the assessment on plaintiffs’ refining machinery and equipment for tax year 2010.
In the matters bearing Docket Nos. 007238-2010 and 007113-2010, the taxpayers filed timely appeals directly with this court challenging the assessments on portions of the subject property for tax year 2010. In the matters bearing Docket Nos. 011286-2010 and 011284-2010, the taxpayers filed appeals with the Gloucester County Board of Taxation challenging the assessments on *471 other portions of subject property for tax year 2010. The Board affirmed those assessments and plaintiffs filed timely appeals with this court challenging the Board’s judgments. At the time that each of the four complaints were filed with this court plaintiffs had paid all taxes and municipal charges due on the subject property, up to and including the first quarter of the taxes and municipal charges assessed on the subject property for tax year 2010. Plaintiffs also paid the taxes and municipal charges due on the subject property on May 1, 2010.
These appeals follow appeals filed by plaintiffs for each tax year since they purchased the subject property in 2004. Numerous appeals filed by prior owners of the subject property, dating back to 1988, are pending in this court.
On June 7, 2010, plaintiffs moved for an Order reducing their local property taxes on the subject property while these appeals are pending, beginning with the tax payment due on August 1, 2010. In addition, plaintiffs seek an Order insulating them from interest and penalties associated with the relaxed tax payments. Plaintiffs argue that the “interests of justice” warrant this relief because in a decision concerning the assessment on the subject property for tax years 1985, 1986, and 1987, this court concluded that the 1985 sales price for the property paid by a prior owner was the best indicator of value available to the court. Coastal Eagle Point Oil Co. v. Township of West Deptford, 13 N.J.Tax 242 (Tax 1993), aff'd, 15 N.J.Tax 190 (App.Div.1995). Thus, plaintiffs argue, the purchase price they paid for the property in 2004, $111,000,000, is the best indicator of the value of the subject property and the court should reduce plaintiffs’ ongoing tax payment obligation to the amount that would be due if the subject property were assessed at a equalized market value of $111,000,000.
Alternatively, plaintiffs request that the court suspend, beginning with the August 1, 2010 payment, their obligation to pay taxes associated with the assessment on the refinery machinery and equipment. Plaintiffs argue that their January 8, 2010, notice to the municipal tax assessor that the machinery and equipment *472 had been idled prior to December 31, 2009 constituted notice pursuant to N.J.S.A 54:4-35.1 that that property was no longer subject to taxation for tax year 2010. Thus, plaintiffs assert, the assessment on the machinery and equipment should have been vacated by the assessor and plaintiffs should not be required to pay taxes attributable to that portion of the assessment. Plaintiffs also request that they be relieved of the obligation to pay interest and penalties associated with the suspended tax payments. The municipality opposes plaintiffs’ request for relief. The court heard argument from counsel on July 19, 2010.
II. Conclusions of Law
In support of their position, plaintiffs rely on N.J.S.A. 54:3— 27. It is clear, however, that that statute applies only to the two direct appeals. N.J.S.A. 54:51A-lb applies to the two appeals to this court seeking review of judgments of a county board of taxation. The statutes provide in relevant part:
At the time that a complaint has been filed with the Tax Court seeking review of judgment of county tax boards, all taxes or any installments thereof then due and payable for the year for which review is sought must have been paid. Notwithstanding the foregoing, the Tax Court may relax the tax payment requirement and fix such terms of payments as the interests of justice may require.
[N.J.S.A. 54:51A-lb.]
N.J.S.A. 54:3-27 provides in relevant part:
A taxpayer who shall file an appeal from an assessment against him shall pay to the collector of the taxing district no less than the total of all taxes and municipal charges due, up to and including the first quarter of the taxes and municipal charges assessed against him for the current tax year in the manner prescribed in R.S. 54:4-66.
Notwithstanding the foregoing, the county board of taxation may relax the tax payment requirement and fix such terns for payment of the tax as the interests of justice may require. If the county board of taxation refuses to relax the tax payment requirement and that decision is appealed, the tax court may hear all issues without remand to the county board of taxation as the interests of justice may require.
These unambiguous statutes do not vest in this court the authority to grant the broad relief plaintiffs request.
Statutory construction begins with the statute’s plain language. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). *473 “A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996)(quotations omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977) (quotations omitted).
N.J.S.A. 54:51A-1 plainly applies only to “all taxes or any installments thereof then due and payable” on the subject property for the year for which review is sought “[a]t the time that a complaint has been filed with the Tax Court seeking review of” a judgment of the county board of taxation. At the time that plaintiffs’ complaints seeking review of county board judgments were filed, all taxes due and payable on the subject property for the current tax year had been paid. Plaintiffs seek to be relieved from the payment of taxes due and payable after the time that their complaints were filed in this court.
N.J.S.A. 54:3-27 contains similar language. That statute requires that a taxpayer filing a direct appeal in this court must pay “no less than the total of taxes and municipal charges due, up to and including the first quarter of taxes and municipal charges assessed against him for the current tax year____” At the time that plaintiffs filed their direct appeals, all taxes and municipal charges due on the subject property up to and through the first quarter of tax year 2010 were paid. Neither statute addresses taxes due after this court’s jurisdiction is established through the timely filing of a complaint. If granted, plaintiffs’ motion would insulate plaintiffs from paying a significant portion of their local property taxes on the subject property for the remainder of tax year 2010 and into tax years 2011 and beyond until these appeals are resolved. Moreover, plaintiffs would be absolved of interest and penalties associated with those taxes. Nothing in the unambiguous language of N.J.S.A 54:51A-1 and N.J.S.A. 54:3-27 suggests that this court can provide such relief.
*474 In light of the fact that the two statutes are unambiguous and subject to only one interpretation it is not necessary for this court to examine the legislative history of the provisions. The statutes plainly state the scope of available relief and it is incumbent on this court to apply that plain language. However, the evident purpose of the provisions and their station in the overall statutory scheme for the assessment and collection of taxes support the conclusion that the statutes do not authorize the relief plaintiffs seek.
It is well established that the amount of local property taxes due on a particular parcel is determined on a yearly basis. Aperion Enter. v. Borough of Fair Lawn, 25 N.J.Tax 70, 86 (Tax 2009). The assessed value of taxable property is determined as of October 1st of each year for the following tax year, N.J.S.A. 54:4-23, and may change as market forces affect the property’s trae market value. Moreover, each tax year constitutes a separate cause of action for taxpayers seeking to challenge the assessment on their property and an appeal must be filed for each year under review. Contrary to this structure, plaintiffs’ requested relief would begin with the August 1, 2010 tax payment on the subject property and extend into tax year 2011 and all following years until these appeals are resolved. Plaintiffs seek relief for tax years that have not yet begun, for which assessments on the subject property have not been set, and for which no one can be certain that plaintiffs will even be the owners of the subject property, let alone have filed timely tax appeals. This court’s authority to review an assessment on real property is limited by statute. McMahon v. City of Newark, 195 N.J. 526, 951 A.2d 185 (2008). The controlling statutory scheme creates jurisdiction in this court for a given tax year only upon the filing of a timely complaint. It is not possible, therefore, for the court to grant relief today for taxes due in tax year 2011 and later.
In addition, the “ ‘principle that taxes must be paid when due as a condition to litigating liability for the amount alleged due is firmly embedded in our law.’” Wellington Belleville, LLC v. Township of Belleville, 20 N.J.Tax 331, 333 (Tax 2002)(quoting *475 Woodlake Heights Homeowners Assoc, v. Township of Middle-town, 7 N.J.Tax 364, 366 (App.Div.1984)). “The purpose of the tax payment requirement is ‘to assure the flow of revenue to a municipality while an appeal is pending.’ ” Wellington Belleville, supra, 20 N.J.Tax at 335-36 (quoting Lecross Assocs. v. City Partners, 168 N.J.Super. 96, 98-99, 401 A.2d 1099 (App.Div.), certif. denied, 81 N.J. 294, 405 A.2d 837 (1979)). “The requirement to pay the taxes on which the appeal is predicated has a rational basis.” U.S. Land Resources v. Borough of Roseland, 24 N.J.Tax 484, 488 (Tax 2009). This is true regardless of the apparent validity of the taxpayer’s claimed entitlement to a reduction in an assessment.
The nonpayment of taxes has no relationship to the correct amount of a local property assessment and is itself irrelevant to the determination of the assessment. The payment of taxes is made a requirement for the filing of a tax appeal not because the payment or nonpayment of taxes has a bearing on the amount of the assessment...
[Rt. 88 Office Assoc, v. Township of Brick, 13 N.J.Tax 14, 21 (Tax 1992).]
The court would upend this orderly plan were it to hold that plaintiffs could pay a reduced amount of tax on the subject property because plaintiffs have produced evidence that they ultimately will prevail in these appeals. The rule has always been that the public interest in an uninterrupted and predictable flow of tax revenue to municipalities outweighs a taxpayer’s claim to be entitled to a reduction in taxes. Until the taxpayer proves that the assessment on its property is excessive, the taxpayer must pay the full amount of tax due. Overpayments as a result of a successful claim are addressed through refunds by the taxing district as provided by law. Plaintiffs, however, ask that the burden in these appeals be shifted to the municipality in that plaintiffs seek to reduce their tax payment obligations immediately even though they have not proven their claims. If plaintiffs ultimately are not successful in reducing the assessment on the subject property, they presumably would be liable for the unpaid balance of the tax, but free from any interest and penalties. The Legislature and Governor certainly did not envision this approach.
In addition, the history of the enactment of N.J.S.A. 54:51A-1 and N.J.S.A. 54:3-27 demonstrate that the statutes address only *476 those taxes due and owing at the time a complaint is filed. “Prior to the 1999 Amendments, if a taxpayer instituted an action at the county level which was dismissed for failure to pay taxes pursuant to N.J.S.A. 54:3-27, the Tax Court was without jurisdiction to hear the appeal ... and was obligated, as a matter of law, to dismiss any complaint which was dismissed at the county level for failure to pay taxes.” Christian Asset Management Corp. v. City of East Orange, 19 N.J.Tax 469, 474-75 (Tax 2001) (citing Bllum Ltd. Partnership v. Township of Bloomfield, 15 N.J.Tax 409 (Tax 1995), aff'd, 16 N.J.Tax 41 (App.Div.1996)). L. 1999, c. 208, § 5 amended N.J.S.A. 54:3-27 so that “the tax payment requirement is no longer a jurisdictional matter incapable of being relaxed by this court.” Christian Asset, supra, 19 N.J.Tax at 475. “The effect of this amendment is to allow the Tax Court to hear the merits of a case, if required by the interests of justice, even if’ the case was subject to dismissal for failure to pay taxes at the time that the complaint was filed. Ibid. N.J.S.A. 54:51A-1 was similarly amended. In light of the amendments, the “court is vested with the power to decide whether hearing this case would best serve the interests of justice” despite the taxpayer’s failure to pay all taxes and municipal charges due at the time that the complaint is filed. Ibid.
Thus, it is plain that the two statutes concern the taxes due on the subject property at the time that complaints are filed in this court — the taxes previously required to be satisfied to establish jurisdiction — and not taxes due after the complaint is filed. The “interest of justice” provision allows for a relaxation of the previously rigid jurisdictional requirement so that taxpayers facing dire financial difficulties not of their own making will not be precluded from initiating a challenge to an assessment. A failure to pay taxes and municipal charges due after the time that the complaint is filed will not result in dismissal of an appeal. Thus, plaintiffs do not need relaxation of the August 1, 2010 tax payment in order to maintain their challenge of the tax year 2010 assessment on the subject property.
Nor is the court convinced by plaintiffs’ arguments that the assessment on the subject property is confiscatory in nature and
*477 that due process requires relaxation of plaintiffs’ tax payment obligations. In J.L. Muscarelle, Inc. v. Township of Saddle Brook, 14 N.J.Tax 453, 477 (Tax 1995), Judge Lasser issued a concurring opinion suggesting that where there is evidence that a property is so substantially overassessed as to result in the taxes being virtually confiscatory, due process may require a hearing so that tax is paid on an assessed value deemed reasonable by the court during the pendency of the tax appeal. “This opinion, however, was not part of a majority opinion, nor was it joined by any other judge in that particular case.” Christian Asset, supra, 19 N.J.Tax at 475 n. 2. Plaintiffs cite no controlling precedent providing that an ongoing tax payment obligation may be relaxed in order to ameliorate what is viewed as a confiscatory assessment prior to a decision on the merits of the assessment. Nor have plaintiffs established that the assessment on the subject property is so excessive as to amount to a taking of the Eagle Point refinery by the taxing district. The mere fact that plaintiffs paid $111,000,000 for the subject property six years ago does not, standing alone, prove that the current assessment of the property at an equalized value twice that amount is erroneous, let alone confiscatory. Plaintiffs admit that vagaries in the global petroleum market affect the fair market value of oil refineries. It may well be true that at the time that the subject property was purchased its value was substantially less than was its value on October 1, 2009, the relevant valuation date, which predated the permanent idling of the facility. In support of their argument, plaintiffs have offered little more than their claim that because the 1985 purchase price of the facility was the best evidence of its value for tax years 1985, 1986, and 1987 the same must be true with respect to the 2004 purchase price for tax years 2010 and beyond. Nor have plaintiffs established as fact to any significant degree the financial health of plaintiffs, the effect of the tax assessment on their ability to use the oil refinery in their business ventures, or if the taxes collected on the facility had anything to do with its closure, given the numerous other forces cited by plaintiffs as reasons for the cessation of operations. The record plainly does not support a finding of a confiscatory assessment.
*478 The court notes, moreover, that despite plaintiffs’ confident assertions that the assessment on the subject property is patently excessive and should be set at an amount reflective of the 2004 purchase price, plaintiffs have not moved for summary judgment on that claim. If, as plaintiffs assert, the correct assessment on the subject property is readily inferable from the circumstances of the 2004 sale, these appeals are ripe for summary resolution. Yet, at oral argument on the present motion, plaintiffs’ counsel stated that summary judgment was inappropriate in these appeals because of the complexity of the task of determining the true market value of the subject property. That same complexity precludes a determination by this court that the property is so grossly overassessed that plaintiffs should be relieved of their obligation to pay the full amount of taxes due on the subject property under a theory of due process while these appeals are pending.
The same is true of plaintiffs’ argument that they are entitled to be relieved entirely of their obligation to pay taxes on the portion of the assessment attributable to machinery and equipment. Plaintiffs claim that they complied with the notice requirements of N.J.S.A. 54:4-35.1 and are, as a result, entitled to have the assessment on the machinery and equipment vacated for tax year 2010. Plaintiffs have not, however, moved for partial summary judgment on that point. The reason for this may be that the municipality contends that N.J.S.A. 54:4-35.1 does not even apply to refinery machinery and equipment, that plaintiffs have not satisfied the terms of the statute in any event, that the machinery and equipment are subject to taxation even if idled as long they are held for potential use by plaintiffs in refining crude oil, and that as of the applicable valuation date, the machinery and equipment were in use by plaintiffs, rendering them subject to taxation for all of tax year 2010, even if they were later idled. These disputed legal and factual questions apparently are too complicated to lend themselves to resolution through a partial summary judgment motion at this time. They are, therefore, also too complicated and uncertain to constitute the basis for an order relieving plaintiffs of their obligation to pay taxes on the refinery machinery and equipment.
*479 In light of these holdings, the court need not address several legal questions implicated by plaintiffs’ motion, including whether N.J.S.A. 54:8-27 allows a taxpayer in a direct appeal to seek tax payment obligation relief from this court without first making an application to the county board of taxation and whether either statute authorizes a reduction in the amount of taxes due on property that is the subject of an appeal, as opposed to limiting the court’s authority to setting the terms on which the payment of the full amount of taxes due on the property may be made. The court leaves those questions for another day.
As a final note, plaintiffs’ moving papers list docket numbers for each of the above-captioned matters for tax years 2005 through 2010. Because the relief sought is for tax payments beginning on August 1, 2010, the court issues this opinion under only the 2010 docket numbers. It is the court’s understanding that all taxes and municipal charges for the subject property for tax years 2005 through 2009 have been paid.
An Order implementing the court’s decision is enclosed.