**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2287-21

NURYA NORIEGA,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted October 23, 2023 – Decided December 19, 2023

Before Judges Gilson and Berdote Byrne.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx4264.

Samuel J. Halpern, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Brandon Bowers, Deputy Attorney General, on the brief).

PER CURIAM

Nurya Noriega appeals from a February 17, 2022 final agency decision by the Board of Trustees of the Public Employees' Retirement System (the Board), which denied her application for accidental disability retirement benefits. Noriega argues that the Board erred in denying her request to amend her application and in failing to merge her appeal of the denial of the amendment with the denial of her application for accidental disability retirement benefits. Discerning nothing arbitrary, capricious, or unreasonable in the decisions by the Board, we affirm.

I.

For approximately sixteen years, Noriega worked for Bergen County as a motor vehicle operator. She was hired in 2000, and her duties involved driving vans and buses to transport individuals with disabilities to medical appointments.

In December 2015, Noriega applied for accidental disability retirement benefits. In her application, she identified an April 30, 2012, motor vehicle accident as the traumatic cause of her disability. The Board granted Noriega ordinary disability retirement, but denied her request for accidental disability retirement, finding that her disability was the result of a pre-existing condition, or a pre-existing condition aggravated or accelerated by her work effort.

Noriega administratively appealed, and the Board transferred the contested matter to the Office of Administrative Law (OAL) for a hearing. Before the hearing commenced, Noriega requested to amend her application to include an additional event as a contributing cause of her disability. In that regard, Noriega reported that on April 22, 2004, while at work, a passenger assaulted her and injured her head and neck.

The Board considered but denied Noriega's request to amend her application. In a February 28, 2019 letter, the Board explained that Noriega's proposal to include the 2004 incident was inconsistent with the position Noriega had already taken because, in her then-pending administrative appeal, Noriega contended that the 2012 motor vehicle accident was the substantial cause of her disability. The Board also noted that after the 2004 incident, Noriega had continued to work for over eight years as a driver before she was involved in the 2012 accident.

The Board's February 28, 2019 letter also informed Noriega that if she disagreed with the Board's determination, she needed to file an administrative appeal by submitting a written statement to the Board within forty-five days. On April 5, 2019, Noriega, through her counsel, submitted a letter appealing the Board's determination to deny her request to amend her accidental disability

application. Noriega suggested that the denial of her request to amend her application be considered as part of the pending OAL hearing. The Board never responded to Noriega's April 5, 2019 letter.

An Administrative Law Judge (ALJ) conducted a two-day hearing on Noriega's administrative appeal on August 14, 2019, and October 6, 2020. On the first day of the hearing, Noriega moved to amend her application to include the 2004 incident. After hearing from counsel, the ALJ determined that the denial of the request to amend had not been referred to the OAL and, therefore, the issue was not before him.

During the hearing, the ALJ heard testimony from three witnesses: Noriega; Dr. Yakov Gologorsky, a neurosurgeon called by Noriega; and Dr. Andrew Hutter, an orthopedic surgeon called by the Board. Both doctors were admitted as medical experts.

In her testimony, Noriega described several injuries and accidents that had affected her head, neck, and upper back. On cross-examination, she acknowledged that she had been in a motor vehicle accident in 1999 before she started to work for Bergen County. In that accident, Noriega had injured her back when a motor vehicle rear-ended the vehicle she was driving.

Noriega also testified about the April 22, 2004 incident where a passenger assaulted her. She explained that a passenger of a van she was driving hit her and knocked her down. She was taken to a hospital, treated, and released the same day. After approximately one to two weeks, she returned to work.

In November 2004, a Magnetic Resonance Imaging (MRI) was taken of Noriega's cervical spine. The MRI showed that Noriega had bulging annuli at C4-5 and C6-7 of her cervical spine. She was prescribed medication and physical therapy for the pain in her neck and head.

In March 2012, Noriega saw her doctor due to pain in her neck. Her doctor sent her for an MRI. The MRI report, signed March 11, 2012 and addended on March 13, 2012, indicated degenerative changes in Noriega's cervical spine from C3 to C7 and compression of the spinal cord in the cervical region. Following the MRI, Noriega was prescribed physical therapy.

On April 30, 2012, Noriega was injured in a motor vehicle accident while at work. She testified that another vehicle struck her vehicle on the driver's side. Noriega was taken to the hospital, treated, and released that same day. Thereafter, Noriega was out of work for approximately six months, complaining of pain in her neck and upper back.

A-2287-21

In June 2012, a doctor sent Noriega for another MRI, which was performed on June 22, 2012. The MRI did not show any interval changes in Noriega's cervical spine when compared to the March 9, 2012 MRI. Thereafter, Noriega was treated for pain in her neck and back by several doctors. In November 2012, Noriega returned to work and resumed her normal duties.

In April 2015, Noriega began seeing Gologorsky. The following month, Gologorsky reported that Noriega had "occasional and fleeting cervical pain" for at least ten years. On June 30, 2015, Gologorsky and an assisting neurosurgeon performed cervical spine surgery on Noriega.

Gologorsky testified that following the surgery, he considered Noriega permanently and totally disabled. He opined that the 2012 motor vehicle accident was a substantial cause of Noriega's disability, but that the 2004 incident also played a contributory role.

Hutter testified on behalf of the Board. He opined that the 2012 accident was not the primary cause of Noriega's disability. Instead, he opined that her disability was based on previous degenerative changes in her neck and back. Hutter also noted that the MRI results from March 2012 and June 2012 did not reveal any changes, and that Noriega had returned to work performing her full duties for several years after the 2012 accident.

6

On January 20, 2022, the ALJ issued an initial decision affirming the Board's denial of accidental disability retirement benefits. Relying on the medical experts' testimony at the hearing, the ALJ found that Noriega's disability was the result of pre-existing conditions, which included degeneration of Noriega's cervical intervertebral discs and displacement of her lumbar intervertebral discs. The ALJ also found that the April 30, 2012 accident was not the substantial contributing cause of Noriega's disability. Instead, the ALJ concluded that Noriega's disability was the result of pre-existing conditions that were aggravated or accelerated by her work. Accordingly, the ALJ dismissed Noriega's appeal, thereby affirming the Board's denial of Noriega's application for accidental disability retirement benefits.

Noriega administratively appealed the ALJ's decision to the Board. At a meeting held on February 16, 2022, the Board adopted the ALJ's decision. The following day, the Board issued its final agency decision denying Noriega's application for accidental disability retirement benefits. Noriega now appeals from the Board's final determination.

## II.

On appeal to us, Noriega makes two arguments. She contends that the Board erred in (1) denying her request to amend her disability application; and

(2) failing to merge her appeal of the Board's denial of her request to amend with her appeal of the denial of her application for accidental disability retirement benefits. We are not persuaded by either of those arguments, and we affirm the Board's final determination.

Our review of an administrative agency determination is limited. In re Carter, 191 N.J. 474, 482 (2007); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." McKnight, 476 N.J. Super. at 162 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Under this standard, our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial, credible evidence in the record; and (3) whether in applying the law to the facts, the administrative agency "clearly erred in reaching" its conclusion. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

We are not bound by an agency's statutory interpretation or other legal determinations. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting Mayflower Secs. Co. v. Bureau of Secs. in the Div. of

Consumer Affs., 64 N.J. 85, 93 (1973)). Nevertheless, we accord "substantial deference to the interpretation given" by the agency to the statute it is charged with enforcing. Bd. of Educ. of Neptune v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 31 (1996) (citing Merin v. Maglaki, 126 N.J. 430, 436-37 (1992)). "Such deference has been specifically extended to state agencies that administer pension statutes" because "'a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise.'" Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (first citing Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007); and then quoting In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

A.      The Board's Determination on Accidental Disability.

A member seeking accidental disability retirement benefits must prove five factors:

> 1. that he [or she] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and

> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his [or her] usual or any other duty.
>
> [Richardson, 192 N.J. at 212-13.]

See also N.J.S.A. 43:15A-43.

A disability must be the "direct result" of a traumatic event, so that the event constitutes "the essential significant or the substantial contributing cause of the [applicant's] disability." Gerba v. Bd. of Trs. of the Pub. Emps.' Ret. Sys., 83 N.J. 174, 185-86 (1980). The New Jersey Supreme Court has explained that when there is an existing underlying condition that is aggravated by the traumatic event, the resulting disability is not accidental and only gives rise to "ordinary" pension benefits. Id. at 186. Consequently, pre-existing conditions that cause, or combine to cause, a disability exclude applicants from eligibility for accidental disability retirement benefits. Richardson, 192 N.J. at 211.

The burden of proving the "direct result" by competent medical testimony rests on the applicant.  See Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 428 (2018); Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008).  To qualify for accidental disability benefits, an applicant must meet "an extraordinarily high threshold that culls out all minor injuries; all major injuries that have fully resolved; all partial or temporary disabilities; and all cases in which a member can continue to work in some other capacity."  Patterson, 194 N.J. at 43 (quoting Richardson, 192 N.J. at 195).

Initially, we note that Noriega is not challenging the Board's determination that the 2012 motor vehicle accident was not the substantial contributing cause of her disability.  Indeed, Noriega has presented no arguments challenging that determination.  Moreover, the substantial, credible evidence supports the ALJ's determination, which was then adopted by the Board, that the 2012 motor vehicle accident was not the substantial contributing cause of Noriega's disability.

B.    Noriega's Challenge to the Denial of Her Request to Amend Her Application.

Noriega contends that the Board erred in denying her request to amend her application to add the 2004 incident as an additional traumatic event.  She

cites to N.J.A.C. 17:2-6.3(a) and argues that the Board's denial of her request to amend violated that regulation. N.J.A.C. 17:2-6.3(a) states:

> Except as provided by N.J.A.C. 17:2-6.1 and 6.7, a member shall have the right to withdraw, cancel, or change an application for retirement at any time before the member's retirement allowance becomes due and payable through [the Member Benefits Online System] or by sending a written request signed by the member. Thereafter, the retirement shall stand as approved by the Board.

Subsection (b) of N.J.A.C. 17:2-6.3 makes it clear, however, that subsection (a) is addressing a request to change a retirement date or an option on the type of retirement benefits selected. N.J.A.C. 17:2-6.3(b).

Moreover, N.J.A.C. 17:2-6.7, which is an identified exception to N.J.A.C. 17:2-6.3(a), addresses applications for accidental disability retirement benefits. N.J.A.C. 17:2-6.7 does not expressly address when an applicant can or cannot amend an application for disability retirement. Subsection (b) of that regulation provides:

> Once the Board approves a member for a disability retirement benefit, the member's retirement application shall not be withdrawn or canceled, or amended to a later retirement date than the date specified in the approved retirement application.

Although that subsection does not directly apply to Noriega's request to amend her application, it does clarify that N.J.A.C. 17:2-6.3(a) does not apply.

The Board has not identified a regulation governing whether an application for accidental retirement benefits can be amended and, if so, under what conditions. Our review of the pension regulations has also not disclosed a regulation governing whether and when an amendment can be requested. Accordingly, the question presented to us is whether the Board acted arbitrarily, capriciously, or unreasonably in denying Noriega's request to amend her application.

In its February 28, 2019 letter, the Board set forth its reasons for denying the request to amend the application already pending before the OAL. The Board reasoned that Noriega's request to amend was inconsistent with the position she had already taken because her original application identified only the April 2012 motor vehicle accident as the traumatic event. The Board also reasoned that the 2004 incident should not be considered an additional traumatic event because Noriega had continued to work for over eight years after that incident.

Although it would have been helpful if the Board had responded to Noriega's April 5, 2019 letter, we cannot say that the Board's decision to deny the request to amend was arbitrary, capricious, or unreasonable. The statute that defines the requirements for accidental disability benefits mandates a member

13

apply for retirement "within five years of the original traumatic event." N.J.S.A. 43:15A-43(a). The statute also allows the Board to consider an application filed after the five-year period, but the wording of the statute establishes that the determination is within the Board's discretion. Ibid.

Accordingly, we discern no abuse of discretion in the Board's determination to not allow Noriega to amend her application to include the 2004 incident as a contributing traumatic event. Noriega made her application in December 2015, and based that application on the 2012 automobile accident. She first sought to amend and change her position in August 2018, after the Board had already denied her application for accidental disability retirement benefits but had granted her ordinary disability retirement. Moreover, the matter had already been transferred to the OAL. Given all those circumstances, we see nothing arbitrary, capricious, or unreasonable in the Board's decision.

Finally, we reject Noriega's argument concerning the Board's failure to merge her appeals. That argument is merely another challenge to the Board's decision to not allow Noriega to amend her application. In support of her argument, Noriega references the entire controversy doctrine, but that doctrine does not support the relief she is seeking. Noriega seems to suggest that had the Board referred its denial of a request to amend her application, the ALJ could

14                                                                  A-2287-21

have considered the 2004 incident. The Board's denial of her request to amend her application, however, did not involve disputed facts. Instead, it involved a procedural issue regarding whether Noriega should be permitted to amend her application at that point in the proceedings. Because Noriega has not identified anything arbitrary, capricious, or unreasonable concerning the Board's denial of her request to amend, we discern no reversible error in the Board's decision not to "merge" and refer that issue to the OAL.

In summary, our review of this record establishes that the Board did not act arbitrarily, capriciously, or unreasonably in denying Noriega's application for accidental disability retirement benefits. The record also does not disclose anything establishing that the Board acted arbitrarily, capriciously, or unreasonably in denying Noriega's request to amend her application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2287-21