**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0041-23

WILLIAM HAUS,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued October 21, 2024 – Decided November 6, 2024

Before Judges Berdote Byrne and Jacobs.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx3791.

Steven D. Cahn argued the cause for appellant (Cahn & Parra, PA, attorneys; Steven D. Cahn, on the briefs).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

William Haus appeals from a final administrative determination of the Board of Trustees of the Public Employees' Retirement System ("Board" or "PERS") denying his requests to maintain his PERS multiple-member pension status, and for a hearing conducted by the Office of Administrative Law ("OAL"). We vacate the Board's determination and remand for a hearing before the OAL to determine whether Haus was laid off and whether he is entitled to reinstatement of his PERS multiple-member status.

I.

Haus was first enrolled in PERS on November 1, 1984, when he became employed with South Plainfield as a recreation attendant. The parties stipulate he attained multiple-member status on August 1, 2009, when he started a second job as a motor-vehicle operator for Middlesex County and maintained those two positions for nearly eleven years.

On March 24, 2020, Haus received an email from the Director of Recreation at South Plainfield, Elizabeth Yarus, ("Yarus Email") informing him as follows:

> As the situation with COVID[-]19 continues to change and develop and the Governor puts additional restrictions on operations, I have been asking what that will mean for you. Effective immediately, we can not

> have part-time staff coming into the building to do any work.
>
> This leaves you with the below options:
> -You can use [Paid Time Off] days as you see fit
> -You can take unpaid time
> -We can terminate your status so you may be eligible to collect unemployment . . . . If you choose this option, will [sic] be happy to reinstate you after this situation resolves and we are back to our regular operating status.

Haus selected the third option in order to collect unemployment benefits. He continued to work for Middlesex County because his position as a Meals on Wheels delivery person was deemed essential, allowing him to collect only a reduced amount of unemployment benefits. Upon reinstatement at South Plainfield on September 21, 2020, Haus applied to have his PERS multiple-member status reinstated as well.

The Division of Pensions and Benefits determined Haus's decision to temporarily cease work to receive unemployment benefits disqualified him from multiple-member PERS status and reiterated this determination to Haus on February 17, 2022, specifying Haus's period of non-employment amounted to a disqualifying "break in service." However, the Division noted South Plainfield would be able to remit further pension contributions to him as a PERS multiple-member if he could present evidence his period of non-employment was due to a layoff.

3

To determine whether Haus's period of non-employment was a "layoff," the Division requested South Plainfield provide "the actual layoff notice that was presented to Mr. Haus." South Plainfield responded, "there was no 'actual' layoff notice," only the Yarus Email. The Division informed South Plainfield the Yarus Email was insufficient to qualify as a layoff notice and notified Haus on November 23, 2022, that its decision to not reinstate his multiple-member PERS status would not change because it equated a lack of a layoff notice with a finding Haus had not been laid off.

Haus appealed the Division's decision on December 8, 2022, and the Board agreed with the Division's decision to not reinstate Haus's multiple-member PERS status on May 12, 2023. Haus appealed and requested an administrative hearing on June 23, 2023. The Board affirmed its decision not to reinstate Haus's multiple-member PERS status on August 17, 2023 and denied Haus an administrative hearing. This appeal followed.

II.

Our review of an administrative agency's determination is limited. In re Carter, 191 N.J. 474, 482 (2007); McKnight v. Bd. of Rev., Dep't of Lab., 476 N.J. Super. 154, 162 (App. Div. 2023). We will sustain a board's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable,

A-0041-23

or that it lacks fair support in the record." McKnight, 476 N.J. Super. at 162 (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Pursuant to this standard, our review is guided by three inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial, credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency "clearly erred in reaching" its conclusion. Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

Although we are not bound by an agency's statutory interpretation or other legal determinations, Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting Mayflower Secs. Co. v. Bureau of Secs. in the Div. of Consumer Affs., 64 N.J. 85, 93 (1973)), we accord an agency "substantial deference to the inter[pretation] given" to the statute it is charged with enforcing. Bd. of Educ. of Neptune v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 31 (1996) (citing Merin v. Maglaki, 126 N.J. 430, 436-37 (1992)). "Such deference has been specifically extended to state agencies that administer pension statutes" because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Piatt v. Police & Firemen's Ret. Sys., 443 N.J.

Super. 80, 99 (App. Div. 2015) (first citing <u>Richardson v. Bd. of Trs., Police &</u> <u>Firemen's Ret. Sys.</u>, 192 N.J. 189, 196 (2007); and then quoting <u>In re Election</u> <u>L. Enf't Comm'n Advisory Op. No. 01-2008</u>, 201 N.J. 254, 262 (2010)).

On appeal, Haus argues he should have been afforded an administrative hearing before the OAL because there are disputed facts as to the Board's decision to deny his PERS multiple-member status. N.J.A.C. 17:2-1.7 provides guidance regarding appeals from PERS Board decisions and an appellant's entitlement to an administrative hearing:

> The Board shall determine whether to grant an administrative hearing based upon the standards for a contested case hearing set forth in the Administrative Procedure Act, N.J.S.A. 52:14B-1 and the Uniform Administrative Procedure Rule, N.J.A.C. 1:1-1 et seq. Administrative hearings shall be conducted by the Office of Administrative Law pursuant to the provisions of N.J.S.A. 52:14B-1 et seq. and N.J.A.C. 1:1.1.

> If the granted appeal involves solely a question of law, the Board may retain the matter and issue a final determination, which shall include detailed findings of fact and conclusions of law based upon the documents, submissions and legal arguments of the parties. The Board's final determination may be appealed to the Superior Court, Appellate Division. If the granted appeal involves a question of facts, the Board shall submit the matter to the Office of Administrative Law.

> [N.J.A.C. 17:2-1.7(a).]

6

See also Frank v. Ivy Club, 120 N.J. 73, 98 (1990). We conclude the Board erred in denying Haus an administrative hearing because there are material issues of fact as to whether Haus was laid off.

Prior to May 21, 2010, state employees could aggregate their salaries from multiple state positions for pension purposes. See N.J.S.A. 43:15A-25.2. The Legislature has since eliminated this entitlement, providing:

> after [May 21, 2010], a person who is or becomes a member of the [PERS] and becomes employed in more than one office, position, or employment covered by the retirement system or commences services in a covered office, position, or employment with more than one employer shall be eligible for membership in the retirement system based upon only one of the offices, positions, or employments held concurrently.
>
> [N.J.S.A. 43:15A-25.2(a).][1]

The Legislature included a grandfathering provision permitting employees who had achieved multiple-member PERS status before May 21, 2010, to retain their status, as long as "the member continues to hold [the pre-May 21, 2010

---

[1] Although Haus in his brief cites to the PERS Guidebook, which states N.J.S.A. 43:15A-7 is the statute defining the multiple-member PERS policy and grandfathering provision, the correct statute is N.J.S.A. 43:15A-25.2, which is cited by the Board in its brief and its Final Administrative Determination.

positions] without a break in service."[2]  N.J.S.A. 43:15A-25.2(c).  A "break in service" for PERS purposes is defined as "any pension reporting period without pay . . . with the exception of approved leaves of absence, lay-off, abolishment of position, military leave, Workers' Compensation, litigation, or suspension." N.J.A.C. 17:2-1A.1.  We agree with Haus that a genuine issue of fact exists as to whether his 2020 period of non-employment qualified as a "layoff" excluded from N.J.A.C. 17:2-1A.1's definition of "break in service."

Determining the Legislature's intent is the critical first step in statutory interpretation.  W.S. v. Hildreth, 252 N.J. 506, 518-19 (2023).  "The 'best indicator' of legislative intent 'is the statutory language.'"  Id. at 519 (quoting State v. Lane, 251 N.J. 84, 94 (2022)).  We "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole."  Ibid. (alterations in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  "When the plain language of a statute is clear and unambiguous," we will "apply the law as written."  Ibid.  We "may neither rewrite a plainly-written enactment of the

---

[2] This grandfathering provision entitles only those with multiple-member status to retain their status and does not permit grandfathered employees to aggregate the salaries of positions started after May 21, 2010, for pension purposes. N.J.S.A. 43:15A-25.2(c).

Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). This analysis applies equally to provisions in the New Jersey Statutes and the New Jersey Administrative Code. See US Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012) ("We interpret a regulation in the same manner that we would interpret a statute.").

We conclude Haus's period of unemployment may be consistent with a layoff. A layoff is a "separation of a permanent employee from employment for reasons of economy or efficiency or other related reasons and not for disciplinary reasons." N.J.A.C. 4A:1-1.3;[3] see also N.J.S.A. 11A:8-1(a) ("A permanent employee may be laid off for economy, efficiency[,] or other related reason."); Layoff, Black's Law Dictionary (12th ed. 2024) (defining "layoff" as "[t]he termination of employment at the employer's instigation, usu[ally] through no fault of the employee; esp[ecially], the termination—either temporary or permanent—of many employees in a short time for financial

---

[3] Title 4A of the New Jersey Administrative Code pertains to employees in the civil-service system. See N.J.A.C. 4A:1-1.2(c). This title is applicable to actions carried out by Haus's employer, South Plainfield, because it is an enumerated New Jersey civil service system employer. Civ. Serv. Jurisdictions, Civ. Serv. Comm'n, https://www.nj.gov/csc/about/divisions/slo/jurisdictions.html (last visited Oct. 28, 2024).

A-0041-23

reasons."). "Municipalities governed by the civil service system have the right to lay-off employees when facing exigent financial circumstances." Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314, 320 (2015).

There are several statutory and administrative protections afforded to civil service employees subject to a layoff. See, e.g., N.J.A.C. 4A:8-1.1 to -1.6 (outlining an employer's duty to consider alternatives to layoffs, consult with affected employees' union representatives, and notify employees of the layoff); N.J.A.C. 4A:8-2.1 to -2.6 (outlining an affected employee's post-layoff rights); N.J.S.A. 11A:8-1 to -4 (providing specific pre-layoff actions and alternatives to layoffs civil service employers must consider). Despite these provisions, there is no statute, administrative code provision, or case law cited by the Board supporting the Board's conclusion a formal layoff notice is required in order to conclude a layoff in fact occurred. These provisions merely lay out the protections afforded to any civil service employee subject to a layoff. Importantly, each of these provisions are subject to the definition of "layoff" as provided by N.J.A.C. 4A:1-1.3. That definition states that a layoff occurs only when there is "the separation of a permanent employee from employment for reasons of economy or efficiency or other related reasons and not for disciplinary reasons." Ibid. That definition does not require any formal layoff

 A-0041-23

notice. Thus, we conclude the existence of a formal layoff notice is not determinative of whether a layoff occurred. See State v. Cooper, 256 N.J. 593, 605 (2024) (concluding if a provision "carefully employ[s] a term in one place yet exclude[s] it in another, it should not be implied where excluded"). It was therefore unreasonable for the Board to conclude Haus did not experience a layoff as a matter of law based solely on its conclusion South Plainfield had not issued a formal layoff notice.

South Plainfield posits Haus chose to voluntarily terminate his employment, rendering him ineligible to reinstate multiple-member PERS status. However, as noted by Haus, the Yarus Email cannot be read in a vacuum. The email intended to provide options to employees during an unprecedented global pandemic and stated "[i]f you choose this option, [we] will be happy to reinstate you after this situation resolves and we are back to our regular operating status." Yarus's authority to extend those options is in question, and the parties do not dispute the email is devoid of any discussion of the pension consequences of any of the options. The parties do not dispute Haus was reinstated, consistent with the email. Haus was entitled to an OAL hearing to determine whether this promise of automatic reinstatement of employment was

11

tantamount to a layoff, which would enable him to reinstatement of multiple-member PERS status.

We vacate the Board's decision and remand for a hearing before the OAL. We take no position regarding the final determination. We do not retain jurisdiction.

Reversed and remanded for an OAL hearing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-0041-23